# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CENTRAL BROWN COUNTY WATER AUTHORITY,

    Plaintiff,

v.                                                Case No. 09-C-131

CONSOER, TOWNSEND, ENVIRODYNE, INC.,
now merged into AECOM, USA, INC.

    Defendant.

**DECISION AND ORDER GRANTING
MOTION FOR PARTIAL DISMISSAL**

       This case arises out of the design and construction of an underground water pipeline and related facilities that serve the local government members of Plaintiff Central Brown County Water Authority ("the Authority"). The Authority is a governmental body with statutorily defined powers whose main purpose is to serve as a wholesale water supplier to its members. *See* Wis. Stat. § 66.0823. The Authority's members consist of several communities surrounding the City of Green Bay, including the Villages of Allouez, Bellevue, and Howard, the City of DePere, the Town of Lawrence, and Ledgeview Sanitary District No. 2, each of whom had been notified that its groundwater exceeded United States Environmental Protection Agency ("EPA") standards for radium and that it needed an alternative source of drinking water. In 2004, the Authority decided to supply water to its member communities by purchasing Lake Michigan water from the City of Manitowoc, which is located approximately forty miles southeast of Green Bay. To that end, the Authority retained Defendant Consoer, Townsend, Envirodyne ("CTE") to design the pipeline that

would be needed to transport the water to the member communities, and to provide engineering and inspection services in accordance with the terms of a written Professional Services Agreement dated December 23, 2003. The Agreement was amended on April 15, 2004 to include additional services. The pipeline construction was substantially completed in May 2007, and the system was fully operational by late August 2007. The Authority now claims that the construction costs significantly exceeded estimates and that the system has failed to perform properly.

The Authority filed this action against CTE in Brown County Circuit Court on December 4, 2008, and CTE, a Delaware corporation with its principal place of business in Chicago, removed the case to this Court on February 9, 2009, asserting diversity jurisdiction under 28 U.S.C. § 1332. In its Amended Complaint, the Authority has asserted professional malpractice and breach of contract claims which are premised upon numerous separately alleged breaches of CTE's contractual duties regarding design, engineering, and construction of the pipeline and related facilities. The Authority has also asserted a claim against CTE for misrepresentation and a request for punitive damages. Presently before the Court is CTE's motion to dismiss the Authority's claim for misrepresentation and punitive damages. For the reasons that follow, CTE's motion will be granted.

**Standards Governing Motion To Dismiss**

The standards governing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure are well established. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In deciding whether it is sufficient to state a claim, the court must "accept[ ] the complaint's well-pleaded allegations as true and draw[ ] all favorable inferences for the plaintiff." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

2

However, the court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.2009). The allegations must be sufficient "'to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted); *Ashcroft v. Iqbal*, ––– U.S. ––––, 129 S.Ct. 1937, 1949 (2009).

Exhibits to a pleading are part of the pleading, Fed. R. Civ. P. 10(c), and consideration of such documents does not convert a motion to dismiss into a motion for summary judgment, *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 858 (7th Cir. 2002). Moreover, "where the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom.'" *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1991) (quoting *Foshee v. Daoust Const. Co.*, 185 F.2d 23, 25 (7th Cir. 1950)).

**Misrepresentation Under Wisconsin Law**

Wisconsin recognizes three distinct forms of misrepresentation: (1) intentional misrepresentation (fraud); (2) negligent misrepresentation; and (3) strict liability misrepresentation. *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 24, 288 N.W.2d 95, 99 (1980). Each requires a

3

showing that: (1) the defendant made a material representation of fact; (2) the representation of fact was untrue when made; and (3) the plaintiff believed such representation to be true and relied thereon to its detriment. *Id.* at 25; *Whipp v. Iverson*, 43 Wis.2d 166, 169-170, 168 N.W.2d 201, 203-204 (1969). Each type of misrepresentation also differs in several respects particularly as to the state of mind required. For intentional misrepresentation, or fraud, the defendant must make the representation knowing it is untrue, or recklessly without caring whether it was true or false, and with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage. In strict responsibility, the misrepresentation must be made on the defendant's personal knowledge or under circumstances in which he necessarily ought to have known the truth or untruth of the statement, and the defendant must have an economic interest in the transaction. Intent to deceive and good-faith belief in the truth of the representation are immaterial to strict liability misrepresentation. In this classification the speaker is supposed to possess complete knowledge of the facts or could normally be expected to know them without investigation. A person is therefore justified in expecting infallibility as to the representations of fact. For negligent misrepresentation, the defendant need only fail to exercise ordinary care in making a misrepresentation or in ascertaining the facts but like other cases of negligence, it requires a duty of care or a voluntary assumption of a duty. *Id.*

Although the Authority does not specify which form of misrepresentation it is asserting, its Amended Complaint fails to state a claim as to any of the three.

**The Amended Complaint Fails To State A Claim For Misrepresentation**

In its Amended Complaint the Authority alleges that CTE made essentially two separate categories of misrepresentations. First, it alleges: "[u]pon information and belief, CTE significantly

4

underestimated the costs of the . . . pipeline project under circumstances in which CTE knew or ought to have known the truth or untruth of the statement." (Am. Compl. ¶ 60.) Second, the Authority alleges: "[u]pon information and belief, CTE misrepresented the experience and capability of its assigned staff to design and oversee construction of a large steel pipe" and "its knowledge of Wisconsin administrative rules and permitting requirements, and the impact of such rules and permitting requirements on the design, permitting and construction of the pipeline project." (*Id.* ¶¶ 62-63.) The Authority also alleges that it reasonably relied on CTE's estimates and its professed experience and that CTE made a financial gain on the Authority's reliance. (*Id.* ¶¶ 61, 64, 66.)

The Authority argues in its response to CTE's motion that, contrary to the allegations in its complaint, it is not really alleging that CTE made two kinds of misrepresentations, one concerning its cost estimates and another concerning its previous experience. "Rather," the Authority contends, "the allegations about the cost estimates are relevant to the misrepresentation claim of CTE's lack of experience with steel pipe." (Br. In Response at 3.) In other words, the Authority seems to argue, the misrepresentation on which its claim is based is CTE's statement that it had prior experience designing a pipeline with steel pipe. The fact that CTE significantly underestimated the cost of the pipeline is simply "evidence of just one of the problems that resulted from CTE's misstatement of its experience with respect to steel pipe." (*Id.* at 4.) CTE's estimates were off, the Authority argues, because it lacked experience in the design and construction of a steel pipeline.

The Authority's withdrawal of the suggestion in its Amended Complaint that CTE's cost estimates constituted an actionable misrepresentation is reasonable. While CTE was required to prepare an "opinion of probable construction cost" as part of its duties under the agreement, the

5

Contract expressly cautions: "Since Engineer has no control over local conditions, Engineer does not guarantee the accuracy of any construction cost estimates as compared to contractor's bids or the actual cost to the Client." (Am. Compl. Ex. A at 1.) In light of this language, it is difficult to see how CTE's "opinion of probable cost estimate" could possibly amount to a misrepresentation of fact.

The general rule is that the tort of misrepresentation requires a statement of existing fact, not one of opinion or future prediction. *Hartwig v. Bitter*, 29 Wis.2d 653, 656, 139 N.W.2d 644, 646 (1966); *Consolidated Papers, Inc. v. Dorr-Oliver, Inc.*, 153 Wis.2d 589, 594, 451 N.W.2d 456, 459 (Ct. App. 1989) (holding that to be actionable as misrepresentations, "statements of fact must relate to present or pre-existing facts, not something to occur in the future"). An "opinion of probable cost estimate" is by definition a prediction of a future event – what the cost will be. An exception to the general rule that predictions of future events are not actionable as misrepresentations of fact exists when the maker of the statement is aware of facts incompatible with the opinion or prediction. For example, if CTE was aware of facts at the time it rendered its "opinion of probable cost estimate" that showed that the actual cost of construction would be significantly higher than its estimate, it might be actionable. But as the Authority explains in its Response, "the thrust of the Authority's misrepresentation claim relates to CTE's misrepresentations as to its experience with large steel pipe." (Br. In Response at 6.) In other words, the Authority's claim is not that CTE gave a cost estimate that it knew was too low but that it lacked the experience to give an accurate cost estimate. In other words, that it lacked knowledge one way or the other. While this may amount to professional malpractice, it does not constitute a misrepresentation of fact, especially in light of the contractual language cited above.

6

As to the thrust of the Authority's misrepresentation claim – that CTE misrepresented its knowledge and experience of steel pipelines, CTE argues that this claim is barred by the merger clause in the parties' agreement. The Agreement states: "This Agreement constitutes the entire agreement between the parties hereto and supersedes any oral or written representations, understandings, proposals, or communications heretofore entered into by or on account of the parties and may not be changed, modified, or amended except in writing signed by the parties hereto." There are no representations concerning CTE's knowledge, experience, or capability contained in the Agreement. Based on this language, CTE argues that the Authority's claim should be dismissed. The Authority argues in response, that the merger clause at most "supersedes only then existing oral or written representations 'heretofore' entered into by the parties." (Br. In Response at 9.) It does not bar future representations made after the agreement was signed, the Authority contends, and it is just such representations that it is relying upon here. (*Id.*)

As CTE notes, however, there are serious problems with the Authority's reliance on after-the-fact statements to support a claim for misrepresentation. One of them is reliance. In its Amended Complaint, the Authority alleged that it relied on CTE's misrepresentations concerning its knowledge and experience in deciding to retain CTE in the first place. (Am. Compl. ¶ 64.) But this would have required a representation before the Agreement was signed, one which would be barred by the merger clause. *See Peterson v. Cornerstone Property Development, LLC*, 2006 WI App 132, ¶ 31-34, 294 Wis. 2d 800, 720 N.W.2d 716. And once the Authority entered into the Agreement with CTE, representations as to CTE's knowledge and experience did not matter. The Authority had already retained CTE as its engineer on the project. The Amended Complaint fails

to allege how or what damages the Authority sustained as a result of misrepresentations made by CTE after the Agreement was signed.

The most serious defect in the Authority's claim, however, at least to the extent it is for intentional misrepresentation, is that it fails to allege with any particularity what CTE's alleged misrepresentation was. The Amended Complaint alleges a conclusion, i.e., that CTE "misrepresented the experience and capability of its assigned staff to design and oversee construction of a large steel pipe." (Am. Compl. ¶ 62.) But nowhere in its Amended Complaint does the Authority provide notice of what was said by CTE, who from CTE said it, or when it was said. Such specificity is required for at least claims of intentional misrepresentation. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). And even for the other forms of misrepresentation, the complaint should at least provide the defendant sufficient notice of the claim that is made to allow a defense. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal citations and quotations omitted).

It is clear from its response, however, that the Authority's misrepresentation claim does not rest on actual statements or verbal representations by CTE employees. Instead, the Authority contends that CTE's misrepresentations come in the form of CTE's actions in performing the agreement:

> When CTE requested the contractor's bid on steel pipe, it made a representation that it had sufficient experience and expertise to design the construction of a steel pipe and oversee its construction. It did not. When CTE put Frank Musgrave as the

8

> resident engineer on this project and Roger Schmidt as assistant resident engineer, it was representing that they had the requisite experience to provide on-site engineering and oversee construction of large steel pipe. They did not. When CTE hired inspectors, it was making a representation that they had sufficient experience and expertise to oversee the construction of a steel pipe or that CTE would train them to do so. They did not and CTE provided little to no training for them.

(Br. In Response at 11.)

CTE argues that if this theory of misrepresentation-by-deficient-performance were to be accepted, then nearly every breach of a contract calling for the performance of services could be joined with a claim for misrepresentation. The Court agrees. If by merely undertaking the work called for by the contract, a party is deemed to be representing to the other party that he has the experience and training needed to perform it properly, then any failure to properly perform can be framed as a claim for misrepresentation. Such a theory would destroy the distinction between contract and tort law and create confusion that would increase both the cost of doing business and the uncertainty of litigation.

The Authority offers no explanation as to why such a substantial change in the law should be made. Indeed, it is difficult to see what the Authority's claim for misrepresentation adds to the case. The Authority has already asserted claims against CTE for breach of contract and professional malpractice. If CTE committed professional malpractice or breached its agreement with the Authority, then it would seem that the Authority will be able to recover damages for the losses it sustained, regardless of whether CTE misrepresented its knowledge and experience. If, on the other hand, CTE properly fulfilled its obligations under the contract, then whether it misrepresented its knowledge and experience is irrelevant, since the Authority would in that event have suffered no loss. The Authority fails to explain why its contract and malpractice claims are inadequate.

9

The Authority contends that its position is supported by the principle of law that conduct, not just a verbal statement, may constitute a representation of fact. *See Novell v. Migliaccio*, 2010 WI App 67, ¶11, 325 Wis. 2d 230, 783 N.W.2d 897 (painting over evidence of leaky basement could be a representation that the basement did not leak); *John Doe 1 v. Archdiocese of Milwaukee*, 2007 WI 95, ¶ 95, 303 Wis. 2d 34, 734 N.W.2d 827 (placing priests where they had unsupervised access to children could constitute representation that the diocese did not know the priests were a danger to children). That certain conduct under certain circumstances can amount to a representation of fact, however, is not a license to place any meaning on conduct that one chooses. Having entered into a contract with the Authority, CTE had a legal obligation to perform it. The fact that it undertook to do so cannot be reasonably construed as a representation about its knowledge and experience. Accordingly, the Authority's misrepresentation claim fails. And since the Authority has made no showing that further amendment at this late date would be anything other than futile, the claim will be dismissed with prejudice. *London v. RBS Citizens, N.A.*, 600 F.3d 742, 747 n. 5 (7th Cir. 2010).

**The Authority's Request For Punitive Damages Should Be Stricken**

Under Wisconsin law, punitive damages are not available as a remedy in breach of contract actions. *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 988 (7th Cir. 2003) (citing *Weiss v. United Fire & Cas. Co.*, 197 Wis.2d 365, 541 N.W.2d 753, 763 (1995), *Autumn Grove Joint Venture v. Rachlin*, 138 Wis.2d 273, 405 N.W.2d 759, 762-63 (App.1987)). To warrant consideration of punitive damages in cases where they are available, the defendant's conduct must be more than merely negligent. *Brown v. Maxey*, 124 Wis. 2d 426, 432, 369 N.W.2d 677, 681 (1985). "The plaintiff may receive punitive damages if evidence is submitted showing that the

defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Wis. Stat. § 895.043(3). CTE contends that because the Amended Complaint fails to allege any facts that could support an award of punitive damages, its request for such relief should be struck.

The Authority, citing *Drake v. Wham-O Mfg. Co.*, 373 F. Supp. 608, 611 (E.D. Wis. 1974), in response, argues that a motion to dismiss or strike will not lie against a request for punitive damages since such a request is not itself a claim but simply part of the prayer for relief. For this reason, and because the facts alleged do support an award of punitive damages, the Authority argues that CTE's motion to strike its request for punitive damages should be denied.

The Court concludes that the Authority's request for punitive damages, whether viewed as a separate claim or simply a form of relief, should be dismissed. Rule 12(b)(6) is intended to "test the formal sufficiency of the statement of the claim for relief." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 3d § 1356, at 354 (2004). Where it is clear from the allegations of the complaint that a plaintiff is not entitled to punitive damages, the claim for such relief should be dismissed. *See Maciosek v. Blue Cross & Blue Shield United of Wisconsin*, 930 F.2d 536, 540 (7th Cir. 1991) (affirming Rule 12(b)(6) dismissal of claim for punitive damages as preempted under ERISA). Otherwise, the parties and the court will be required to waste time and resources on a claim that has no basis in fact or law.

For example, among the factors that may be considered in awarding punitive damages are the financial circumstances of the defendant. Absent a claim for punitive damages, such sensitive information is irrelevant and not discoverable. As long as a claim for punitive damages remains in the case, however, the defendant's financial circumstances are fully discoverable. Absent at least

a colorable claim for punitive damages, a defendant should not be required to disclose its confidential financial information to other parties. Dismissing a clearly deficient punitive damage claim on a Rule 12(b)(6) motion to dismiss protects defendants from being subjected to overly broad discovery demands and reduces the unnecessary litigation costs to both parties.

The allegations of the Authority's Amended Complaint, taken as true, do not support its request for punitive damages. There is no allegation that CTE acted maliciously or with intentional disregard of the Authority's rights, and the conduct alleged in the complaint does not support more than a breach of contract or simple negligence. Neither is sufficient to support a claim for punitive damages.

In response to CTE's motion, the Authority argues that punitive damages may be recoverable because CTE acted deliberately when it terminated the relationship in the fall of 2007, after the system was fully operational, when the Authority refused to agree to pay CTE additional compensation for what CTE claimed it was entitled to due to its increased time on the project. CTE agreed to perform the work called for by the Agreement at a "not to exceed" charge. The Authority alleges that CTE improperly demanded that it agree to additional payments for work called for by the Agreement. The Authority alleges that it was required to engage another engineer to finish the project when CTE unilaterally terminated the Agreement.

Of course, CTE's decision to terminate its relationship when it could not reach agreement with the Authority on additional compensation was a deliberate act, as are many breaches of contracts. The dispute between the parties is over whether the additional compensation CTE sought was for work it had agreed to perform for a set price under the Agreement. The Authority alleges that CTE was not entitled to additional compensation and that its refusal to continue under the

Agreement was a breach. (Am. Compl. ¶¶ 51-56.) Whether this is true or not, no facts are alleged that would support the suggestion that such conduct was of a type that can support an award of punitive damages. Accordingly, CTE's motion to dismiss or strike the Authority's punitive damage claim will also be granted but without prejudice. If the Authority uncovers facts that would support such relief, it may move to amend pursuant to Fed. R. Civ. P. 15.

Accordingly, CTE's motion for partial dismissal (Dkt. #34) is granted. The Authority's misrepresentation claim is dismissed with prejudice, and its claim for punitive damages is dismissed without prejudice. CTE shall file an answer to the Amended Complaint within fourteen days of the entry of this decision and order.

**SO ORDERED** this   21st   day of October, 2011.

      s/ William C. Griesbach
      William C. Griesbach
      United States District Judge