# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CENTRAL BROWN COUNTY WATER AUTHORITY,

        Plaintiff,

    v.                                     Case No. 09-C-0131

CONSOER, TOWNSEND, ENVIRODYNE,

        Defendant.

## DECISION AND ORDER ON SUMMARY JUDGMENT MOTIONS

This diversity action arises out of the design and construction of a 65-mile underground water pipeline and related facilities that serve the local government members of Plaintiff Central Brown County Water Authority (the Authority). The Authority filed this action against its engineer, Defendant Consoer, Townsend, Envirodyne (CTE), asserting professional malpractice and breach of contract claims which are premised upon numerous alleged breaches of CTE's contractual duties regarding the design, engineering, and construction of the pipeline system. In a previous decision, the Authority's claim against CTE for misrepresentation was dismissed. In addition, the Authority's request for punitive damages was stricken without prejudice because the Authority's complaint had not alleged sufficient factual support for punitive damages. Presently before the Court are the parties' cross motions for partial summary judgment and the Authority's motion to amend its complaint to renew its request for punitive damages. For the reasons that follow, CTE's motion for partial summary judgment will be denied in part and granted in part, and the remaining motions will be denied.

## BACKGROUND

The Authority is a governmental body with statutorily defined powers whose main purpose is to serve as a wholesale water supplier to its members. *See* Wis. Stat. § 66.0823. The Authority's members consist of several communities surrounding the City of Green Bay, including the Villages of Allouez, Bellevue, and Howard, the City of De Pere, the Town of Lawrence, and Ledgeview Sanitary District No. 2, each of whom had been notified that its groundwater exceeded United States Environmental Protection Agency standards for radium and that it needed an alternative source of drinking water.

In 2004, the Authority decided to supply water to its member communities by purchasing Lake Michigan water from the City of Manitowoc, which is located approximately forty miles southeast of Green Bay. To that end, the Authority retained Defendant Consoer, Townsend, Envirodyne (CTE) to design the pipeline that would transport the water to the member communities, and to provide engineering and inspection services in accordance with the terms of a written Professional Services Agreement dated December 23, 2003. The agreement was amended on April 15, 2004 to include additional services. The pipeline construction was substantially completed in May 2007, and the system has been fully operational since August 2007. The Authority continues to oversee the operation of the pipeline, but has an agreement with Manitowoc Public Utilities (MPU), who is responsible for the operation, repair, and maintenance of the pipeline.

In summer and fall 2007, disputes ensued regarding increasing the contractual "not to exceed" (NTE) price for CTE's services. The parties had agreed that CTE would charge standard hourly rates for its services, but that such charges "shall in no case exceed" fees of $9,784,000. However, CTE alleges that due to significant delays in the project caused by permitting issues and

2

one of the contractors, it advised the Authority in 2006 that it would require additional time to complete the project. In May 2007, the Authority agreed to increase the not-to-exceed (NTE) price, and claims that it ultimately paid CTE $922,800 over the NTE price. In September 2007, after a dispute over proposed amendments to the agreement to provide for additional compensation, CTE terminated its services under the agreement.

The Authority brought this action against CTE, along with two separate actions against three of the contractors on the project, in December 2008. CTE, a Delaware corporation with its headquarters in Illinois, removed this action to federal court, and the actions against the contractors remained in state court where they were consolidated and stayed pending resolution of the case against CTE. CTE has now moved for partial summary judgment as to several components of the Authority's claim.

In all, the Authority seeks close to $15 million in damages for alleged defects in the pipeline due to CTE's deficient and/or negligent performance of its duties under its contract. CTE's motion is primarily directed to three components of the Authority's damage claim that it identifies as the deflection claim, the concrete support claim, and the leakage claim. In essence, the Authority contends that due to the failure of CTE to perform its duties under its contract with the Authority in accordance with the generally accepted standard of care for a professional engineering firm, the pipeline was not properly constructed. The bulk of the damages the Authority seeks in the action consists of costs to be incurred for investigation and repair of these defects. The Authority alleges CTE's breach and/or negligence will require a seven-month shutdown of the pipeline in order to, among other things, excavate all 47 butterfly valves in order to replace the bolts and gaskets attaching each valve to the adjoining pipe, add concrete saddle supports under each valve, test the

3

pipeline to determine whether there is any deflection, inspect and repair the inside of the pipe, install corrosion protection, add manways for future access, backfill and compact the soils. These repairs are necessary, according to the Authority, because CTE's failure to properly fulfill its obligations under the contract make it more probable that the butterfly valve joints will fail prematurely and that corrosion and leakage will develop over time.

In addition to the defects that are the subject of CTE's motion, the Authority alleges additional deficiencies on which it claims it is entitled to partial summary judgment. The Authority alleges, for example that the air-release and air-vacuum valve vaults installed in the pipeline are susceptible to corrosion, and in some cases have already begun to corrode, due to deviations in their installation and defects in their design. Likewise, the Authority alleges that CTE failed to properly supervise the installation of the NEMA 12 cabinet housing an automatic transfer switch at the Howard Booster Station. The Authority also contends that CTE failed to require a submittal, or "shop drawing" detailing the materials and techniques used to install an element in a project, for the butterfly valve connections as required in the specifications. The Authority seeks additional damages, including recovery of costs incurred in repairing sinkholes, to repair sidewalk pavement damage, and to provide a Cathodic Protection System. Finally, the Authority seeks damages for legal fees incurred in pursuing claims against contractors for the alleged defects in the pipeline resulting from CTE's alleged failure to properly supervise the system's construction.

The parties' summary judgment motions largely dispute whether certain alleged defects in the pipeline may serve as the basis for contract and tort damages based on the likelihood that the defects will lead to leakage and other malfunctions in the pipeline in the future. The basis of liability in contract or tort, if any, is CTE's alleged failure to perform its services in accordance with

4

generally accepted professional engineering standards. CTE argues summary judgment should be entered in its favor on several of the Authority's claims for damages because regardless of whether it has failed to meet the standard of care, the Authority has no evidence that it has suffered any damages as a result. CTE contends the Authority is simply speculating as to its damages and improperly seeking to be compensated now for damages that it has not yet sustained and that may or may not occur in the future. In response, the Authority argues that, at least as to its contract claims, summary judgment should be entered in its favor because there is no dispute that the defects in the pipeline constitute a breach, and as a matter of law, it need not prove actual damages–the fact of the breach alone is enough. As to both the contract and tort claims, the Authority contends that it need not wait for the pipeline to start leaking or otherwise malfunction if it knows now that CTE has allowed the pipeline to be installed with defects that will very likely cause systemic problems. Thus, it is seeking damages "to compensate for injuries that have occurred in order to prevent damages that will occur in the future." (Pl.'s Resp. Br. 18, ECF No. 87.)

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where factual disputes do exist, the non-movant's version of events is accepted as true at this stage of the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; however, there must be a *genuine* issue of *material* fact for the cause of action to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing

5

law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any

essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A

"genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury,

would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477

U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

### A.     Contractual Limitation of Liability

CTE offers a threshold argument that most of the damages the Authority seeks are barred

by the language of the contract. The provision of the contract relied on by CTE states:

> [CTE] shall, subject to the terms and provisions of this Agreement . . . [p]erform the
> Services in accordance with generally accepted professional engineering standards
> in existence at the time of performance of the Services. If during the two year period
> following the completion of all Services covered by this Agreement, it is shown that
> [CTE] failed to meet those standards, [CTE] shall indemnify [the Authority] from
> and against any and all damages, loss, or costs if and to the extent arising from
> [CTE's] failure to meet generally accepted professional engineering standards . . .
> [CTE] makes no other warranties either express or implied and the parties' rights,
> liabilities, responsibilities and remedies with respect to the quality of Services,
> including claims alleging negligence, breach of warranty and breach of contract,
> shall be exclusively those set forth herein.

(CTE PFOF, ECF No. 69, ¶ 108.) CTE argues that this language limits its liability to reimbursing

the Authority for payments the Authority has been required to make to third parties on account of

CTE's failure to perform the Services called for by the contract in accordance with generally

6

accepted professional engineering standards. Since the Authority has not sustained any pecuniary loss to third parties, CTE argues the Authority has no claim against it.

CTE reads the provision as limiting its obligation to indemnifying the Authority for liability the Authority incurs to others. CTE bases its interpretation on a definition of the word "indemnify" taken from Black's Law Dictionary: "To reimburse (another) for a loss suffered because of a third party's or one's own act of default." (CTE Br., ECF No. 65, at 18 (citing *Black's Law Dictionary* 83 (9th ed. 2007)). However, a popular dictionary defines the word "indemnify" more broadly to mean "to make compensation to for incurred hurt, loss, or damage." *Merriam-Webster's Collegiate Dictionary*, 591 (10th ed. 1999). The contractual provision does not limit CTE's obligation to indemnifying the Authority for the Authority's liability to others. It speaks of CTE's duty to "indemnify [the Authority] from and against any and all damages, loss, or costs if and to the extent arising from [CTE's] failure to meet generally accepted professional engineering standards." It would appear from the context that the broader definition is the intended meaning of the word here.

This interpretation is also consistent with the general principle of law in Wisconsin that indemnity agreements "are liberally construed when they deal with the negligence of the indemnitor, but are strictly construed when the indemnitee seeks to be indemnified for his own negligence." *Spivey v. Great Atlantic & Pac. Tea Co.*, 79 Wis.2d 58, 63, 255 N.W.2d 469 (1977). Here, the clause at issue deals with the negligence of CTE, and the broader or more liberal construction therefore applies. It follows that CTE's liability is not limited to reimbursement of the Authority for payments it has been required to make to others. Instead, CTE agreed to pay the Authority for any and all damages, loss, or costs arising out of CTE's failure to properly perform its duties, subject to the other limitations set forth.

7

**B.      The Authority's Deflection, Concrete Support, and Leakage Claims**

CTE next argues that all of the Authority's "speculative" claims should be dismissed because the Authority has only shown that damage might occur in the future.  The so-called speculative claims include the Authority's allegations that CTE failed to perform its services in accordance with generally accepted professional engineering standards by: (1) failing to require the contractors to perform deflection testing or to properly perform post-construction compaction testing to determine whether the pipeline is deflecting; (2) neglecting to correct the contractors' failure to install the specified concrete saddle under all of the 47 butterfly valves as opposed to the as-built concrete blocks installed under some of the valves; and (3) failing to ensure the flanged connections for the 48" butterfly valves, including the gaskets and bolts used, were constructed in accordance with CTE's plans and specifications so as to prevent leakage in the pipeline over time.

As to each claim, CTE argues that the Authority has failed to establish that it has suffered any injury or damage resulting from the alleged breach.  Specifically, with regard to the deflection claim, CTE argues that the Authority seeks to perform testing to determine whether the pipeline is deflecting, but it has put forth no evidence that deflection has actually occurred in excess of industry standards or even whether it might deflect in the future.  As to the concrete support claim, CTE alleges that the Authority has presented no evidence that the absence of concrete saddles has caused any damage to the pipeline or its performance and no evidence that damages will occur in the future.  Finally, as the leakage claims, CTE contends that the Authority has not established any leakage at any of the butterfly valves in the five years the pipeline has been fully operational.  Furthermore, CTE urges that MPU, the entity responsible for the ongoing operation, repair and maintenance of the pipeline, has never identified any performance issues, nor has the Authority even asked MPU

8

whether the alleged repairs are necessary or whether they should be performed now or in the future. Thus, CTE contends that at most, the Authority has only shown that the pipeline deviates in some ways from the plans and specifications, but the fact of deviation alone does not mean CTE has breached its standard of care or caused any real injury as a result.

### 1. Requirement of Loss or Damage

The parties agree that in order to state an actionable tort claim, a plaintiff must have suffered actual damages. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 17, 270 Wis. 2d 146, 158, 677 N.W.2d 233, 239 (explaining that "a tort claim is not capable of present enforcement . . . unless the plaintiff has suffered actual damage"); *Niehus v. Liberio*, 973 F.2d 526, 531-32 (7th Cir. 1992) ("There is no tort without an injury."). However, the parties dispute whether damages are a necessary element of a contract claim under Wisconsin law.

CTE argues that the Authority must prove that it has suffered damages to a reasonable degree of certainty in order proceed on either its contract or its negligence claims. *See, e.g.*, *E. Lake Towers Corp. Ctr. Ltd. P'ship v. Scott Paper Co.*, 347 F. Supp. 2d 629, 633 (E.D. Wis. 2004) (granting motion to dismiss where "nowhere in the complaint is there a suggestion that [the landowner] suffered any other type of harm as the result of action or inaction by [the defendant] or that he might sustain some damage in the future"); *Collatz v. Fox Wis. Amusement Corp.*, 239 Wis. 156, 157-58, 300 N.W. 162, 163-64 (Wis. 1941) (holding contract claim failed because plaintiff could not show he suffered any damages even if there was a valid contract and a breach); *Brew City Redevelopment Group, LLC v. The Ferchill Group*, 289 Wis.2d 795, 807, 714 N.W.2d 582 (Wis. Ct. App. 2006) ("A complaint states a claim for breach of contract when it alleges: (1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the

9

plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages."); *Black v. St. Bernadette Congregation of Appleton*, 121 Wis. 2d 560, 566 (Wis. Ct. App. 1984) (affirming summary judgment dismissing breach of contract claim because "damages are an essential element of a contract action"); *Stamm v. Holter*, 2011 WI App 44, ¶ 35, 332 Wis. 2d 317, 797 N.W.2d 935 (affirming summary judgment for defendants because plaintiff "fail[ed] to provide a basis for the damages elements of his claims"); *Wis. Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1289 (7th Cir. 1986) (finding that if a plaintiff sustained no damage from an alleged breach of contract, the breach cannot provide the foundation for a successful damages suit).

The Authority contends that, to the contrary, a finding of liability for breach of contract does not depend on proof of damages. Rather, the Authority argues "the breach itself is the wrong" and proof of liability is complete when the breach is established. *See Stromberger v. 3M Co.*, 990 F.2d 974, 976 (7th Cir. 1993) (applying Illinois law) (stating that "[w]hile the victim of a breach of contract is entitled to nominal damages even if he is not injured by the breach . . . because the breach itself is the wrong, there is no tort without injury") (citing *Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1372 (7th Cir. 1990) (applying Wisconsin law)). The Authority argues that where a party has breached, it owes at least nominal damages, and this is sufficient to survive a motion for summary judgment.

The Authority's argument that evidence of actual damage is not required in order to sue for breach of contract is based on a misreading of the case law and, if adopted, would lead to a waste of public and private resources. None of the cases the Authority cites in support of its argument were in the same procedural posture as this case. In *Olympia Hotels*, for example, the case was before the court on appeal of a judgment following a full jury trial. After the close of evidence, the

10

trial court dismissed the defendant's counterclaim for breach of contract on the ground that the defendant had failed to produce evidence from which the jury could have determined what its damages were. 908 F.3d at 1372. The Court of Appeals held that the trial court had erred for two reasons: (1) the failure to prove damages in a contract claim does not justify the dismissal since the victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages; and (2) a plaintiff is not required to propose a specific damages figure to a jury. *Id.* In support of its holding that under Wisconsin law the defendant's failure to prove damages was not essential to its counterclaim for breach of contract, the Court of Appeals cited *Vasselos v. Greek Orthodox Community*, 24 Wis.2d 376, 129 N.W.2d 243 (1964). There, the Wisconsin Supreme Court reversed the trial court's decision granting the plaintiff's motion for a new trial on a breach of contract claim after the jury awarded only nominal damages of $1.00. The jury's verdict could stand, the Supreme Court held, because the jury could have concluded that even though the defendant breached the agreement, he suffered no damages as a result. 24 Wis. 2d 380-81. In essence, both cases enunciate the principle that in a trial on a claim for breach of contract, a jury that finds a breach but no damages should award nominal damages. Neither case holds, however, that a party is entitled to a trial on a claim that from the outset can support a verdict for no more than nominal damages.

Where the issue has been presented on a motion for summary judgment, on the other hand, courts have stated that a plaintiff must prove damages to go to trial on a breach of contract claim. *See, e.g., Matthews v. Wisconsin Energy Corp. Inc.,* 534 F.3d 547, 557 (7th Cir. 2008) ("Even if the delay fell short of Wisconsin Energy's obligations, Matthews has not shown that this delay damaged her in any way, a prerequisite to stating a claim for a breach of contract."); *see also Brew City*

11

*Redevelopment Group*, 2006 WI App 39, ¶ 11; *Black v. St. Bernadette Congregation of Appleton*, 121 Wis. 2d at 566. None of the cases cited by the Authority hold that a plaintiff has a right to a trial on a claim for breach of contract when the sole relief being sought is an award of nominal damages.

Nominal damages, of course, are damages in name only. *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1264 (10th Cir. 2004) (McConnell, J. concurring). They are not intended to compensate a party for past harm, but serve only as a declaration of rights. *Id.* "Nominal damage awards serve essentially the same function as declaratory judgments." Indeed, it appears that the practice of requesting nominal damages originated before passage of declaratory judgment statutes as a way of obtaining a declaration of rights in cases where there were no damages. *Id.* at 1265 (citing Douglas Laycock, *Modern American Remedies: Cases and Materials* 561 (3d ed. 2002) ("The most obvious purpose [of nominal damages] was to obtain a form of declaratory relief in a legal system with no general declaratory judgment act.")). Now that declaratory relief, where appropriate, can be sought directly, there is no need to bring suit for nominal damages alone. Here, the Authority does not seek declaratory relief; nor would it be appropriate. There is no need to declare the parties' rights under the contract since the work is completed and the parties have no ongoing relationship based on the contract. Thus, absent actual damages, the Authority's contract claim should be dismissed.

This conclusion is not only supported by the cases cited above, but also makes sense both in terms of policy and principle. It would be patently unreasonable to allow the Authority to sue CTE for breach of contract and present its claim to a jury if the only damages that could possibly be assessed are nominal damages—in other words, no more than one dollar. Given the costs of

12

litigation, especially litigation over a project of this magnitude, allowing the case to proceed where the plaintiff seeks only nominal damages would be a massive waste of resources, both those of the parties and the court. The court therefore rejects the Authority's contention that it need not present evidence it suffered loss or damage in order to avoid summary judgment on its claim against CTE for breach of contract.

### 2. Evidence of Harm or Damage

Having determined that the Authority cannot proceed with either its contract or its tort claims if it did not suffer any damage, the next question is whether the Authority has presented any evidence that, if true, would support this necessary element of its claims. The answer varies according to whether the theory of liability is contract or tort.

"Damages in breach of contract cases are ordinarily measured by the expectations of the parties." *Handicapped Children's Educ. Bd. v. Lukaszewski*, 112 Wis.2d 197, 206, 332 N.W.2d 774 (1983). In contracts for the construction of buildings or other structures, the measure of damages for defects and omissions in the performance of the contract "is simply that the party is entitled to have what he contracts for or its equivalent." *DeSombre v. Bickel*, 18 Wis. 2d 390, 396, 118 N.W.2d 868 (1963). When the completed project is not what the owner contracted for, the owner is generally entitled to recover the amount of money it would cost to correct the deficiencies, i.e., the repair costs. *W.G. Slugg Seed & Fertilizer, Inc. v. Paulsen Lumber, Inc.*, 62 Wis. 2d 220, 226, 214 N.W.2d 413 (1974). An alternative measure of damages in a construction case is the diminished value of the property, the difference between the value of the building if it was properly constructed and the value of the building as it was actually constructed. *Id.* Under the economic waste rule, the plaintiff may be allowed only the diminished value of the property if the cost of

13

repair far exceeds the value of the repairs and reconstruction and completion in accordance with the contract would involve unreasonable economic waste. *Id.*; *Champion Companies of Wisconsin, Inc. v. Stafford Development, LLC*, 2011 WI App 8, ¶¶ 13-16, 331 Wis.2d 208, 794 N.W.2d 916.

For actions in tort, on the other hand, the measure of damages is actual harm to the plaintiff's person, property or interests. As noted above, actual damage is harm that has already occurred or is "reasonably certain" to occur in the future. *Tietsworth*, 2004 WI at ¶ 17. Actual damage is not the mere possibility of future harm. *Id.* Under Wisconsin law, the mere possibility of future harm does not constitute actual injury or damage. *Alsteen v. Wauleco, Inc.*, 2011 WI App 105, ¶ 11, 335 Wis.2d 473, 802 N.W.2d 212. Ultimately, "[t]he distinction between tort and contract law rests on their differing concepts of duty: 'contract law rests on bargained-for obligations, while tort law is based on legal obligations' imposed on society at large." *Tietsworth*, 2004 WI at ¶ 28 (quoting *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 247, 593 N.W.2d 445 (1999)).

In this case the Authority asserts it has been harmed because CTE failed to properly prepare the specifications for, and/or supervise the construction of the pipeline. As it pertains to the specific issues on which CTE seeks summary judgment, the Authority has offered evidence in the form of expert opinion that, as a result of CTE's failure to perform its duties in accordance with generally accepted professional engineering standards and as required by the contract, the following occurred: (1) tests for deflection of the pipeline were not performed; (2) concrete supports at the location of the butterfly valves were not installed; and (3) the butterfly valves were not installed with the required bolts and gaskets.

14

CTE denies that it either breached its contract with the Authority or failed to perform its duties in accordance with the proper standard of care. For purposes of its motion, however, CTE argues that even if the Authority's evidence of breach is accepted as true, there is still no evidence that the Authority has sustained any damage. The pipeline continues to function without leaks and as intended. As CTE sees it, the Authority has at most produced evidence that it has concerns about the future performance of the pipeline. But the fact that the Authority has concerns is not by itself evidence of damage. CTE argues that a mere showing of the possibility of future harm does not satisfy the actual damage requirement. In CTE's view, the Authority's claims are speculative at best and fall far short of constituting evidence of actual damage.

Both parties argue *Wisconsin Natural Gas v. Ford, Bacon & Davis Constr. Corp.*, 96 Wis. 2d 314, 335, 291 N.W.2d 825 (Wis. 1980), is instructive. There, the Wisconsin Supreme Court reviewed a jury verdict awarding damages for the negligent installation of a 14-mile natural gas transmission pipeline. 96 Wis. 2d 314, 318-19, 291 N.W.2d 825, 827-28 (Wis. 1980). The plaintiff alleged that due to the failure of the contractor to provide adequate support or proper backfill in the trenches where the pipeline was installed, the pipeline shifted. *Id.* at 320-21. This resulted in "casing shorts," which occur when two pieces of metal piping come into contact with each other and create an electrical charge that causes corrosion and shortens the useful life of the pipeline. *Id.* at 319-21. The Court found the plaintiff did not suffer an injury until it discovered casing shorts at several intersections in the pipeline because the resulting electrical charge rendered the corrosion protection ineffective and necessitated an extensive excavation and repair program to clear the pipeline of the shorts. *Id.* at 325. The Court explained that while the plaintiff could recover for repairs to detected casing shorts, it could not, as a matter of law, recover costs for future excavations

15

to examine whether shorts existed at other intersections. Even if, given the prevalence of other detected shorts, the excavations were likely to uncover more damage, no jury could determine whether or when the pipeline might actually suffer corrosion. *Id.* at 336-37. The Court explained that the plaintiff must do more than "merely show that something might or might not exist or might or might not occur in the future." *Id.* at 335.

CTE argues that here, as in *Wisconsin Natural Gas*, the Authority has alleged defects in the construction of the pipeline. But unlike that case, no equivalent to a "casing short" has been identified yet. There, the casing short and the resulting corrosion were the result of errors in construction that resulted in the pipeline shifting. The need for immediate repair was the damage. Here, the Authority has failed to produce any evidence that the pipeline has shifted or leaked due to the defects alleged in its construction. CTE argues that the Authority cannot recover for damages that it claims are likely, but as yet unproven.

*Wisconsin Natural Gas* is inapposite to the Authority's claim for breach of contract, however, because that case involved a tort claim, not a claim for breach of contract. The statute of limitations on the contract claim had apparently lapsed, and thus the plaintiff in that case was limited to its tort remedies for injuries actually sustained. Here, by contrast, the Authority has sued for breach of contract. The distinction is crucial. "The fundamental idea in allowing damages for breach of contract is to put the plaintiff in as good a position financially as he would have been in but for the breach." *Schubert v. Midwest Broadcasting Co.*, 1 Wis. 2d 497, 502, 85 N.W.2d 449 (1957). As a result, "[a]n injured party is entitled to the benefit of his agreement, which is the net gain he would have realized from the contract but for the failure of the other party to perform." *Thorp Sales Corp. v. Gyuro Grading Co., Inc.*, 111 Wis. 2d 431, 438-39, 331 N.W.2d 342, 346

16

(Wis. 1983). As noted above, "the measure of damages for defects and omissions in the performance of a building contract is simply that the party is entitled to have what he contracts for or its equivalent." *DeSombre*, 18 Wis. 2d at 396. The building need not actually fail in order for a claim for breach of contract to arise. If, for instance, a landowner contracted for a house with a metal roof having an expected life of 100 years, but the contractor installed an asphalt roof with a twenty year life expectancy, the landowner could sue for breach even though the asphalt roof was still performing.

In this case the Authority claims that it contracted for engineering services that would provide it with a pipeline that would provide water for its member communities long into the future without leaks or costly repairs. Instead, the Authority contends, as a result of CTE's failure to properly perform its duties under the contract, it has a defective pipeline that is likely to develop problems earlier than would have otherwise occurred. The Authority has offered evidence, for example, that without the concrete supports that it claims were called for by the contract, "there is a probability that the pipeline will not perform its intended function." ((Pl.'s PFOF, ECF No. 88, ¶162.) The Authority has also offered evidence that as a result of the CTE's failure to insure that proper bolts and gaskets were used in the butterfly valves "there is a probability that problems will occur in the pipeline . . . ." (*Id.* ¶¶ 176-77.) The failure to test for deflection, the Authority contends, leaves it without the assurance that the pipeline was properly constructed that it contracted for. (*Id.* ¶ 152.) This evidence is sufficient to raise an issue whether the Authority received the benefit of its bargain. In other words, the Authority has presented some evidence that the pipeline that was built is of lesser quality because of CTE's breach of its duties under the contract. If true, the Authority would be entitled to damages that would be determined under the principles set forth

17

above.  CTE does not deny that the Authority has disclosed its estimate of the costs needed to repair the alleged defects.  (Def.'s Br. in Supp. of Mot. for S.J., ECF No. 65, at 10, n 7.)  In addition, the Authority claims that "[b]ecause CTE failed to ensure installation in conformance with the plans and specifications, the Authority paid for work that was not performed (by both CTE and the contractors) and material that was not installed."  (Pl.'s PFOF ¶ 198.)  Thus, the Authority has presented evidence of damages resulting from the alleged breach of its contract with CTE.  On the basis of this evidence, CTE's motion for summary judgment must be denied as to the deflection, concrete support and leakage components of the Authority's breach of contract claim.  The motion is granted as to the claim arising in tort.

### 3.    Costs to Investigate Damages

Again citing *Wisconsin Natural Gas*, CTE also contends that as a matter of law the Authority cannot recover the costs to investigate whether it has incurred damages.  There the court held that the costs of excavating the pipeline so as to determine whether it was damaged is not recoverable. 96 Wis. 2d at 335; *see also Moua v. Am Fam. Mut. Ins. Co.*, No. 908-3401, 1999 WL 771906, *4 (Ct. App. Sept. 30, 1999); *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 975 (7th Cir. 2002) ("True, parties must sometimes undertake costly investigations of facts in order to state complaints or defenses that will not be dismissed as frivolous, but there is certainly no general cost-shifting rule that requires the other side to reimburse those kinds of expenses.").  But it is important to note again that this is a contract action.  In an action for breach of contract, "the injured party is entitled to damages that flow directly and necessarily from the breach of contract, and that were reasonably foreseeable to or contemplated by the parties at the time the contract was made." *International Production Specialists, Inc. v. Schwing America, Inc.*, 580 F.3d 587, 598 (7th Cir.

18

2009) (citing *Peterson v. Cornerstone Prop. Dev., LLC*, 2006 WI App 132, ¶ 50, 294 Wis.2d 800, 720 N.W.2d 716).

The Authority contends that as a result of CTE's failure to monitor and properly inspect the construction of the pipeline to insure it was built according to the specifications, it is reasonable for it to conduct inspections, such as the excavations and leak test it has already undertaken, so as to determine the extent of the defects in the pipeline and mitigate any damage that could occur as a result of a future leaks and shutdowns. In other words, the Authority contends that the cost of such investigation and testing is a reasonably foreseeable result of CTE's alleged breach of the agreement. The court cannot conclude as a matter of law on the record before it that such costs will not be recoverable damages if a breach of contract is established. Accordingly, summary judgment will also be denied on this aspect of the Authority's breach of contact claim but granted as to the claim in tort.

## II.     Refund of Voluntary Payment

CTE also seeks summary judgment on the Authority's claims to the extent they seek a refund of $922,800 the Authority paid in excess of the NTE contract price. CTE claims that the Authority agreed on May 11, 2007 that its Board had "approved modification of the not-to-exceed contract amount . . . to reflect costs for work that we believe exceed the original contract scope of work.". (Def.'s Br. 27-28, ECF No. 65.) CTE also argues that the Authority's claim for a refund is barred by the voluntary payment doctrine, which "[places] upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make the challenge either before voluntarily making payment, or at the time of voluntarily making payment." *Butcher v. Ameritech*

*Corp.*, 2007 WI App 5, ¶ 15, 298 Wis.2d 468, 727 N.W.2d 546 (citing *Putnam v. Time Warner*, 2002 WI 108, ¶ 13, 255 Wis. 2d 447, 649 N.W.2d 626). The doctrine is designed to allow entities that receive payment for services to rely upon those funds and to use them in future activities without having to worry about a subsequent demand for return of payment. *Putnam*, 2002 WI 108, ¶ 16.

The Authority responds that it did protest its payment, and therefore the voluntary payment doctrine cannot be applied to block its claims here. Payment under protest precludes application of the voluntary payment doctrine. *Id.*, ¶ 15. A payor must make some form of protest over the payment being made prior to or contemporaneous to the payment. *Id.* The Authority claims that its May 11, 2007 letter stated that although it approved an increase in the NTE amount, "we continue to believe that there have been design issues on this project resulting in additional costs to the Authority that are the responsibility of CTE. The Authority reserves all its rights to address these claims in the future." (Def.'s PFOF ¶ 131, ECF No. 69.) In addition, the Authority contends that it made a similar protest in its August 21, 2007 letter, which stated "This payment is not intended to be and shall not be construed to be a release, satisfaction or novation of any right of the Authority with respect to CTE, or any obligation or liability of CTE to the Authority." (Def.'s PFOF ¶ 132, ECF No. 69.)

But the Authority's letters clearly state that it approved the increased amount, and its "protest" only indicated it reserved the right to later dispute additional costs related to the quality of the work. In addition, the Authority's letter stated that it did not approve the entire increase in the NTE requested by CTE, but rather specified two payments it was either refusing to pay or paying contingent on receiving further documentation. Thus, the Authority appears to have specifically

20

identified certain charges that it took issue with, yet made no similar protestation over the other amounts. The Authority cannot now claim it is owed a refund for sums paid that, in hindsight, it believes it should have paid under protest. Moreover, as CTE points out, the parties' contract required the Authority to give CTE written notice of any disputed items within 20 days after receipt of any invoice. (Def.'s PFOF ¶ 128, ECF No. 69.) Likewise, according to the contract, the Authority was to pay only the undisputed portion of any invoice. (*Id.*) The Authority did not exercise these contractual rights, and for that reason also, its claim for a refund of the amount paid to CTE above the NTE price must be dismissed. Summary judgment will be granted on this issue.

## III.   Recovery of Attorney's Fees and Costs for Third-Party Litigation

Finally, CTE seeks to dismiss the Authority's claim for recovery of legal fees incurred in pursuing lawsuits filed against its contractors in two separate state court proceedings.[1] CTE argues that the Authority's claim for recovery of attorneys' fees and costs in its state court cases must be dismissed because the Authority is not entitled to such recovery as a matter of law. Generally, "absent a statute or agreement to the contrary, each party is responsible for his or her own attorney fees." *Hall v. Gregory A. Liebovich Living Trust*, 2007 WI App 112, ¶ 17, 300 Wis. 2d 725, 735, 731 N.W.2d 649, 654. Under this American Rule, damages must flow directly and necessarily from the breach of contract, and must be reasonably foreseeable at the time the contract was made as a probable result of the breach. *Reiman Assocs., Inc. v. R/A Advertising, Inc.*, 102 Wis.2d 305, 320,

---

[1] On December 4, 2008, the Authority filed three lawsuits in Brown County Circuit Court, one of which was the case before me now, which was removed by CTE. The Authority's two remaining cases against its contractors were consolidated and are currently pending in the circuit court.

306 N.W.2d 292, 300 (Ct. App. 1981). But, courts recognize a narrow exception "where the wrongful acts of the defendant have involved the plaintiff in litigation with others, or placed him in such relation with others as to make it necessary to incur expense to protect his interest." *Id.* (citing *Weinhagen v. Hayes*, 179 Wis. 62, 190 N.W. 1002 (1922)). The Wisconsin Supreme Court recently explained that the

> wrongful act requirement *demands more than an allegation of mere negligence* that has involved a party in litigation; instead, "wrongfulness" requires something similar to fraud or breach of a fiduciary duty to the party seeking attorney fees. Although we do not expressly limit the wrongful act in the *Weinhagen* exception to a showing of fraud or breach of fiduciary duty, such application is instructive. Allowing recovery upon an allegation of mere negligence would contravene the American Rule, which is intended to preserve access to justice without fear that a litigant will be liable for her opponent's attorney fees if she loses.

*Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶ 76-77, 342 Wis. 2d 29, 71, 816 N.W.2d 853, 873.

The exceptions to the American Rule do not apply here. The Authority's claims for misrepresentation were previously dismissed for failure to state a claim, and it has only alleged negligence and breach of contract on the part of CTE here. Furthermore, while perhaps the Authority would not have needed to sue the contractors but for CTE's negligent supervision, the Authority's claims may also be entirely independent; a finding of negligence on the part of CTE may not even be necessary to finding liability in the Authority's separate action against the contractors. In any case, the Authority has established no facts that would permit an inference that its litigation costs are a natural and proximate cause of CTE's conduct, or that CTE's conduct was sufficiently wrongful to constitute a basis for applying the narrow exception to the American Rule here. Consequently, the Authority's claim for recovery of legal fees incurred in pursuing claims against

22

its contractors in state court proceedings is denied and summary judgment will be granted to CTE on this issue.

IV.    **The Authority's Motion For Summary Judgment**

The Authority also argues summary judgment should be granted in its favor on five issues related to its breach of contract claims it claims are undisputed. The Authority claims that it is undisputed that CTE breached its duty under the Agreement with regard to: (1) failures associated with the inspection and installation of the 48" butterfly valve flanges, compaction testing, and construction of valve vaults for air-release and air-vacuum valves; (2) the installation of an automatic transfer switch in a NEMA 12 cabinet at the Howard Booster Station; (3) CTE's failure to require a submittal for the 48" butterfly valve flanged connections; (4) the faulty design of the air-release and air-vacuum valves; and (5) its improper termination of its agreement. However, the Authority's motion can be disposed of in quick order. The Authority's claims depend on a finding that CTE breached its professional engineering standard of care owed to the Authority under the contract terms. The question of whether CTE has breached its duty of care is a fact question not suitable for resolution on summary judgment. *Brown v. Sandeen Agency, Inc.*, 2009 WI App 11, ¶ 23, 316 Wis. 2d 253, 762 N.W.2d 850 ("But negligence is almost always inappropriate for summary judgment."); *Casper v. Am. Int'l. S. Ins. Co.*, 2011 WI 81, ¶ 92, 336 Wis. 2d 267, 800 N.W.2d 880 ("As a general rule, negligence is a question for the fact-finder, and is therefore unsuited to motions for summary judgment."). CTE has raised expert opinions and other evidence, that if true, supports its position that it has not breached its duty of care. In addition, the Authority concedes in its reply brief that issues of fact exist as to its claims regarding overpayments and CTE's

23

allegedly improper termination. (Pl.'s Reply Br. 15, ECF No. 101.) Therefore, the Authority's motion for summary judgment is denied.

## V.     The Authority's Motion to Amend the Pleadings

The Authority has also filed a motion to amend the pleadings in order to renew its claim for punitive damages. In a previous Order, the Court granted CTE's motion to dismiss the Authority's punitive damages claim, but the Authority claims it has "new factual allegations" that support its claim and such amendment will not prejudice CTE. But the facts that the Authority relies on are not new–they are simply newly alleged in its proposed amended complaint. As CTE points out, the Authority's proposed amended complaint adds several pages of allegations regarding communications between the parties that took place in 2007.

Generally, a motion for leave to amend a complaint is evaluated under Federal Rule of Civil Procedure 15(a)(2), which provides that courts "should freely give leave when justice so requires." *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). But when a party seeks to amend the pleadings after the time for doing so has passed as determined by the court's scheduling order, a two-step process applies. First, a court is entitled to apply the heightened good-cause standard of Rule 16(b)(4), under which the primary consideration for the court is the diligence of the party seeking amendment. *Id.* Then, the court considers whether the proposed amendment should be allowed under Rule 15(a)(2), which provides that leave to amend may not be appropriate where the amendment may cause undue delay or prejudice or where it would be futile. *Id.* "[A]mong the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case 'moving toward trial.'" *Id.* at 720.

24

Here, the Authority has not shown good cause for why it now seeks to allege facts that it has largely known of since 2007. Moreover, the Authority's motion comes after more than three years of litigation, more than one year after the Court dismissed the Authority's original claim for punitive damages, and after the case has been fully briefed on cross motions for summary judgment. As CTE argues, the costs of this litigation have been substantial and discovery has been prolific and costly. To allow the Authority to amend its complaint at this late stage in the proceeding would either create the necessity for more rounds of discovery or would cause undue prejudice to CTE who was not on notice of the punitive damages claim. Furthermore, as discussed in striking the Authority's previous claim for punitive damages, the Court finds no allegations that support an inference that CTE acted maliciously or with intentional disregard of the Authority's rights. *See, e.g., Brown v. Maxey*, 124 Wis. 2d 426, 432, 369 N.W.2d 677, 681 (1985). Consequently, the Authority's motion to amend the pleadings is denied.

## CONCLUSION

For the foregoing reasons, CTE's motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART.** CTE's motion is granted as to the Authority's claims for amounts paid in excess of the NTE price and for legal fees and costs to pursue claims against the contractors. CTE's motion is also granted as to the Authority's tort claim for what it calls the deflection, concrete support, and leakage components of its damages. CTE's motion is denied as to the Authority's breach of contract claim for those components. The Authority's motion for partial summary judgment is **DENIED**. Likewise, its motion to amend the pleadings is **DENIED**.

25

The Clerk is directed to place this matter on the court's calendar for a Rule 16 conference to address further scheduling. The parties may appear by telephone.

**SO ORDERED** this ___11th___ day of February, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court